# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADEL DESSOUKI,** A 029 635 695 | : : : | CIVIL ACTION |
| **v.** | : : | |
| **JOHN F. KELLY,** Secretary, U.S. Department of Homeland Security, **JEFFREY SESSIONS,** U.S. Attorney General, **JAMES MCCARMENT,** Acting Director, United States Citizenship and Immigration Services and **JOHN CARRINGTOHN,** Acting District Director, United States Citizenship and Immigration Services Philadelphia District Office | : : : : : : : : : : : | NO. 17-2389 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                    **May 9, 2018**

After he was indicted for illegal reentry after deportation, Adel Dessouki filed this action under 8 U.S.C. § 1503(a) seeking a declaration that he derived United States citizenship from his father who is a naturalized citizen. Moving to dismiss for lack of subject matter jurisdiction, the defendants contend that the statute prohibits the district court from determining Dessouki's citizenship because he raised citizenship as a defense during removal proceedings.

Because Dessouki's claim of citizenship arose out of and was an issue in removal proceedings, he may not bring an action in district court to declare him a United States national under § 1503(a). Therefore, we shall grant the motion to dismiss for lack of jurisdiction.

## Background

Adel Dessouki, a French citizen, came to the United States with his mother on a nonimmigrant visitor's visa in 1983.[1] Although he applied, he never became a lawful permanent resident.

In 1986, Dessouki's mother became a lawful permanent resident based on her marriage to a United States citizen.[2] Two years later in 1988, his mother filed a petition for an alien relative (I-130) on his behalf.[3] On July 31, 1989, Dessouki was "granted indefinite parole into the United States for humanitarian reasons."[4] The I-130 petition was approved on August 9, 1989.[5] Just days before the I-130 petition approval, Dessouki had returned to France, but was "paroled back into the United States on September 27, 1989, to pursue adjustment of [his] status."[6]

In May 1990, Dessouki filed an application to register for permanent residence or adjust his status (I-485) pursuant to his mother's approved I-130 petition.[7] The United

---

[1] Dessouki was granted a nonimmigrant B-2 visa for tourism, pleasure, or visiting. Compl., Ex. F, Resp't Br. in Supp. of N-600 (Doc. No. 4-6) at 1, ECF 2. The record conflicts regarding with whom Dessouki came to the United States. The Complaint and the Motion to Dismiss state that he arrived in the U.S. with his mother on August 16, 1983. Compl. (Doc. No. 4-1) ¶ 10; Mot. to Dismiss (Doc. No. 8-1) at 2. However, according to the administrative record, he and his father followed his mother to the U.S. in 1983 and were admitted on nonimmigrant B-2 visas. Compl., Ex. G, Order on Mot. to Terminate Removal Proceedings (Doc. No 4-7) at 2, ECF 3.

[2] Compl., Ex. R, Resp't Mot. to Reopen (Doc. No. 4-18) at ECF 63.

[3] Mot. to Dismiss at 2–3; Compl. ¶ 11.

[4] Compl., Ex. I, N-600 Appl. Denial, June 5, 2007 (Doc. No. 4-9) at ECF 3. The record does not include any detail as to Dessouki's status as being in indefinite parole, nor does it provide any legal authority explaining the meaning of such status.

[5] Mot. to Dismiss at 2–3; Compl., Ex. K, DHS Mot. to Reopen Removal Proceedings, Apr. 20, 2010 (Doc. No. 4-11) at 3.

[6] Compl., Ex. K, at 3.

[7] Mot. to Dismiss at 3; Compl., Ex. K, at 3.

States contends that he withdrew the I-485 application in July 1990, acknowledging that he was not eligible for adjustment.[8] According to Dessouki, the United States Immigration and Naturalization Service (INS) failed to adjudicate it.[9] In any event, he did not receive lawful permanent resident status.

Dessouki and his father left the United States in 1994 but he "was paroled for the purpose[] of seeking adjustment of status."[10] In February 1994, his father filed another I-130 application on his behalf. Although his father's I-130 petition was approved in June 1994, Dessouki's related I-485 application seeking lawful permanent residence was rejected, due to an improper filing fee.[11] His father became a citizen in 1998. Although Dessouki remained in the United States under his indefinite parolee status, he never became a lawful permanent resident.[12]

On December 15, 2006, while he was serving a state prison sentence in Pennsylvania on a drug trafficking conviction, the Department of Homeland Security (DHS) opened removal proceedings against him. Two and a half months later, on February 27, 2007, Dessouki filed an application for a certificate of citizenship (N-600) with United States Citizenship and Immigration Services (USCIS) to prevent his

---

[8] Mot. to Dismiss at 3 n.4; Compl., Ex. K, at 3.

[9] Compl. ¶ 12.

[10] Compl., Ex. G at 2, ECF 3.

[11] Dessouki maintains that his I-485 application related to his father's approved I-130 petition remains open and pending. Compl. ¶ 14; Mot. to Dismiss at 3. However, the record indicates that the application was "rejected as it contained an incorrect fee," citing 8 C.F.R. § 103.2(a) (1999). Compl., Ex. W, AAO Denial of Feb. 27, 2007 N-600 Appl. for Citizenship (Doc. No. 4-23), at 6 n.6, ECF 8.

[12] Mot. to Dismiss at 3; Compl., Ex. K, at 3 ("The case file and DHS government records contain no proof that [Dessouki] was ever admitted or adjusted to lawful permanent resident status.").

removal.[13]  In his N-600 application, he alleged for the first time that he derived citizenship when his father naturalized as a citizen in 1998.  USCIS denied his N-600 application in June 2007.[14]  One month later in July 2007, Dessouki appealed the denial to the Administrative Appeals Office (AAO).[15]  The AAO, which for some inexplicable reason did not receive the appeal until 2016, upheld the denial on February 1, 2017.[16]

In the meantime, in 2008, Dessouki filed a motion to terminate removal proceedings, claiming he met the statutory requirements for derivative citizenship.  The immigration judge granted his motion, finding that the government had failed to prove alienage.[17]  Because DHS did not appeal the decision, Dessouki was released from custody in May 2008.

Two years later, on April 20 2010, DHS moved to reopen the removal proceedings pursuant to a change in applicable law.[18]  Dessouki did not respond to the

---

[13] Compl., Ex. H, N-600 Application, Feb. 26, 2007 (Doc. No. 4-8).

[14] Compl., Ex. I.

[15] Compl., Ex. J, N-600 Appeal (Doc. No. 4-10).

[16] Compl., Ex. W at 3 fn.1.  The AAO's decision states, "The application was denied in 2007.  The Applicant filed a timely appeal, which our office did not receive until December 2016."  *Id.*

[17] Compl., Ex. G.  The immigration judge found that he derived U.S. citizenship under former § 321(a)(5) of the Immigration Nationality Act, former 8 U.S.C. § 1432, because his presence in the United States since he was paroled in 1989 indicated an intent to remain permanently, even though he was never adjusted to lawful permanent resident status.  *See id.*

[18] Compl., Ex. K, at 2; Compl. ¶ 25; Resp. to Mot. to Dismiss (Doc. No. 13-1) at 15.  In its motion to reopen removal proceedings, DHS pointed to a BIA decision issued subsequent to Dessouki's case that changed the applicable law.  Specifically, the law relied upon to determine whether Dessouki was a derivative citizen should have been pursuant to the holding in the BIA decision, *Matter of Nwozuzu*, 24 I & N Dec. 609 (BIA 2008).  DHS argued that the law as stated in *Nwozuzu* applied retroactively because the original *Nwozuzu* decision was issued before Dessouki was placed in removal proceedings.
    DHS argued that "[d]eterminations involving derivative citizenship are controlled by the law in effect when the last material condition is met."  Compl., Ex. K, at 3 (quoting *Nwozuzu*).  In Dessouki's case, he had to demonstrate derivative citizenship based on former 8 U.S.C. § 1432, not the newly enacted Child Citizenship Act of 2000, which is not retroactive.  Because he had not acquired lawful permanent resident status before he was 18 years old, Dessouki did not derive U.S. citizenship under the former 8 U.S.C. § 1432.  *Id.* at 4 (quoting *Nwozuzu*).

4

motion. Instead, he filed a second N-600 application claiming derivative citizenship on April 28, 2010.[19] On May 20, 2010, removal proceedings were reinstated as unopposed.[20] Then in July 2011, his second N-600 application was denied.[21] On October 11, 2011, Dessouki moved to terminate the removal proceedings, arguing that *res judicata* precluded further proceedings and that he qualified as a derivative citizen.[22] The immigration judge denied his motion in January 2013, explaining that Dessouki "failed to demonstrate his eligibility to derive citizenship through the naturalization of his father."[23]

On April 4, 2014, Dessouki was apprehended by DHS and ordered removed from the United States.[24] He did not appeal the removal order and was removed on March 6, 2015.[25] Sometime later, he returned to the United States. On October 13, 2016, he was charged with illegal reentry after deportation. His criminal case has been stayed pending disposition of this case.

---

The second immigration judge agreed with DHS and denied Dessouki's motion to terminate removal proceedings because he failed to meet the statutory requirement for derivative citizenship under former 8 U.S.C. § 1432. *See* Compl., Ex. Q, Denial of Mot. to Terminate Removal Proceedings, Jan. 31, 2013 (Doc. No. 4-17).

The *Nwozuzu* decision has since been reversed. *Nwozuzu v. Holder*, 726 F.3d 323 (2d Cir. 2013). While this may impact Dessouki's current Third Circuit appeal from the BIA upholding his removal, our analysis of whether § 1503(a) bars district court review remains unaffected.

[19] Compl. ¶ 25; Resp. to Mot. to Dismiss at 15.

[20] Compl., Ex. M, Order Granting Mot. to Reopen Removal Proceedings, May 20, 2010 (Doc. No. 4-13) at 8, ECF 2.

[21] Compl., Ex. O, N-600 Appl. Denial, Jul. 14, 2011 (Doc. No. 4-15) at ECF 2.

[22] Mot. to Dismiss at 5; Compl., Ex. N, Mot. to Terminate Removal Proceedings (Doc. No. 4-14). Dessouki contends that his lawyer reserved his appellate rights. But no appeal was ever filed, despite Dessouki's "clear request" to his lawyer. Compl. ¶ 32.

[23] Compl., Ex. Q, at 12, ECF 13.

[24] Compl. ¶ 33.

[25] Compl., Ex. S, DHS Opp'n to Mot. to Reopen, Jan. 25, 2017 (Doc. No. 4-19) at 1, ECF 2.

In January 2017, Dessouki filed a motion to reopen his removal proceedings which was denied.[26] On February 1, 2017, the AAO upheld the denial of his first N-600 application and simultaneously noted that Dessouki "did not appeal the denial" of his second N-600 application.[27] In this action, Dessouki seeks a declaration that he is a U.S. citizen.

## Standard of Review

In their Rule 12(b)(1) motion, the defendants make a facial challenge to subject matter jurisdiction. They do not dispute the allegations in the complaint. They argue that the allegations demonstrate that Dessouki raised citizenship as a defense during removal proceedings, thus precluding district court review under 8 U.S.C. § 1503(a).

Because the issue before us is a legal question, we consider only the allegations in the complaint and the attached documents. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citation omitted). We accept the allegations as true and construe them in the light most favorable to the plaintiff to determine if he has sufficiently alleged a basis for subject matter jurisdiction. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted); *see also U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

## Analysis

A person may assert citizenship by operation of law in one of two ways. He can claim citizenship as a defense in removal proceedings or he can file an application for

---

[26] Compl., Ex. R; Compl., Ex. U, Denial of Mot. to Reopen Removal Proceedings, Mar. 8, 2017 (Doc. No. 4-21).

[27] Compl. ¶ 33; Compl., Ex. W, at ECF 3 & n.1.

citizenship (form N-600) with USCIS under 8 U.S.C. § 1452(a). An appeal from an adverse decision in each forum is different.

In the removal context, if the immigration judge accepts the citizenship defense, he terminates the removal proceedings without deciding citizenship. *Rios-Valenzuela v. DHS*, 506 F.3d 393, 396–97 (5th Cir. 2007) (citations omitted). If he rejects the defense of citizenship, the purported citizen may petition the Court of Appeals for review of the final order of removal. 8 U.S.C. § 1252(b).

From the denial of an N-600, the applicant can appeal to the AAO. 8 C.F.R. §§ 341.6, 103.3(a). If the AAO affirms the denial, the applicant can seek a judicial declaration of citizenship under 8 U.S.C. § 1503(a) in the district court where he resides.

Section 1503(a) provides:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, **except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding** under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

*Id.* (emphasis added). This provision clearly deprives a district court of jurisdiction to consider a claim of citizenship if the person's status arose by reason of or in connection with removal proceedings.

7

We must decide, based on the allegations in the complaint and the exhibits attached to it, whether the issue of Dessouki's citizenship "arose by reason of, or in connection with" his removal proceedings. 8 U.S.C. § 1503(a)(1). If it did, we do not have jurisdiction.

Dessouki has claimed derivative citizenship four times. After DHS initiated removal proceedings against him in 2006, he first claimed he derived citizenship from his father in his N-600 application filed with USCIS in February 2007.[28] His application was denied.[29] He again raised derivative citizenship in his motion to terminate the removal proceedings in 2008.[30] These first two attempts were clearly "in connection with" removal proceedings, which were open and pending at the time he claimed derivative citizenship. *Id.*

Eight days after DHS moved to reopen removal proceedings on April 20, 2010, Dessouki filed a second N-600 application for citizenship. On May 20, 2010, the immigration judge granted the motion as unopposed and removal proceedings were reopened. While removal proceedings were pending, his second N-600 application was denied in July 2011 and he did not appeal. On October 11, 2011, he filed a motion to terminate the removal proceedings on the ground that he was a derivative citizen. His motion claimed citizenship and was clearly in connection with the reopened removal proceedings. Although the N-600 was filed before removal proceedings were actually reopened, the effort to remove Dessouki was underway.

---

[28] Mot. to Dismiss at 3–4; Compl., Ex. H.

[29] Compl., Ex. W, at 1 n.1, ECF 3.

[30] Mot. to Dismiss at 4; Compl., Ex. F.

8

The exception to § 1503(a) jurisdiction "focuses on the proceeding in which the particular claim to citizenship originates, not the proceeding in which it is being pursued." *Rios-Valenzuela*, 506 F.3d at 398; *see also Olopade v. Att'y Gen.*, 565 F. App'x 71, 73 (3d Cir. 2014). If the citizenship claim is first made in a proceeding other than the removal context, the exception does not bar jurisdiction. *Id.* at 399; *Olopade*, 565 F. App'x at 73. Only if the claim of citizenship originally arose out of or in connection with a removal proceeding does § 1503(a) prohibit jurisdiction. Even if the removal proceedings terminated, the jurisdictional bar remains when a renewed citizenship claim originated from a defense raised to a removal order. *Olopade*, 565 F. App'x at 73.

Dessouki's claim of citizenship originated in the removal proceedings commenced in 2006. Before then, he had sought lawful permanent residence status when his mother petitioned to have him designated as an alien relative. Later, he applied to adjust his status to a lawful permanent resident, based on his father's approved I-130 petition. Not until DHS began removal proceedings in 2006 did he claim United States citizenship. His claim of citizenship, no matter how many times he claimed it later, originated with the removal proceedings. *See Olopade*, 565 F. App'x at 73 (affirming the district court's dismissal of the complaint for lack of jurisdiction because "[a]lthough Olopade's removal proceedings have terminated, the genesis of Olopade's citizenship claim was a defense he raised to a removal order"); *Headly Ombler v. Holder*, 985 F. Supp. 2d 379, 387 (E.D.N.Y. 2013).

The timing of Dessouki's two N-600 applications shows that they were both instigated by removal proceedings. His first application was filed two and a half months after removal proceedings had begun. The second was filed eight days after DHS had

moved to reopen the removal proceedings, and while the first was still open and pending. The second N-600 application is derived from a defense to removal proceedings.

It does not matter that the immigration judge had terminated the original removal proceedings. Those proceedings may have been terminated, but the issue of Dessouki's citizenship remained. The immigration judge did not determine citizenship, finding only that DHS did not prove alienage. Accordingly, Dessouki's claim of citizenship "arose by reason of" or was "in connection with" removal proceedings. 8 U.S.C. § 1503(a)(1).

## Conclusion

Because his claim of citizenship was in connection with removal proceedings, we do not have jurisdiction to review Dessouki's claim for relief. Thus, we shall grant the motion to dismiss the complaint for lack of subject matter jurisdiction.